# Exhibit I

CONTRACT

BETWEEN

BOB ROSS INC.

AND

WIPB-TV

TABLE OF CONTENTS

1. Base Contract
2. Activities
3. Purpose
4. Standard Operating Procedure
5. Underwriting
   A. Basic Funding
   B. Enhancements Funding
   C. Funding Adjustments
   D. Parties' Sponsorship
6. WIPB Series Duties
   A. Direct Production
   B. BRI Copies
   C. Transmission
   D. Distribution
7. BRI Performance Duties
8. Series Ownership
9. WIPB Broadcast Rights
   A. PBS Rights
   B. WIPB Broadcast Rights
   C. Additional Agreed Rights
10. Reversions
    A. Redelivery
    B. All Revert



CONFIDENTIAL

BRI0000314

11. Other Interpretation

    A. BRI Re-licensing

    B. Royalties

    C. Inquiries

    D. BRI Retention

12. Alterations and Updates

13. Book Sales

    A. Publishing

    B. Mail Orders

    C. Revenue Division

    D. Books Accounting

    E. Cooperation

14. Video Sales

    A. Sales Rights

    B. Costs

    C. Royalties

    D. Accounting

    E. Promotion

15. Further Assurances

16. Term

    A. Initial Term

    B. Prior Effects

    C. Renewals

17. Cancellation

    A. By BRI

    B. By WITB

18. Procedure of Termination

    A. Tapes

CONFIDENTIAL

BRI0000315

　　B. Final Accounting

　　C. Survivals

19. Relationship

20. Liabilities

　　A. Insurance

　　B. Other Coverage

　　C. Indemnities

21. Trademarks

22. Copyrights

　　A. Notice

　　B. Enforcement Cause

23. Disputes

　　A. Arbitration

　　B. Enforcement Cause

24. Compliance

25. Amendments

　　A. Subagreements

　　B. Modifications

26. Headings

27. Choice of Law

CONFIDENTIAL

BRI0000316

CONTRACT

This Contract is made effective __JULY 1st__, 1990 (even if signed by one or both parties at a different date or dates) by and between Eastern Indiana Community Television, Inc. (hereinafter, "WIPB") and Bob Ross Inc., a Virginia Corporation (hereinafter, "BRI") agreeing as follows:

1. BASE CONTRACT: This Contract is and becomes the primordial agreement between the parties, integrating all prior agreements, including those agreements between WIPB and Robert N. Ross (aka Bob Ross), all of which agreements have been previously assigned by Robert N. Ross to BRI (to the extent of Robert's interest therein) or have been and remain owned outright by BRI. Any conflict between any of such prior agreements and this Contract shall always be construed and interpreted in favor of this Contract.

2. ACTIVITIES: The parties are engaged in their respective businesses as follows:

    A. WIPB owns and operates television production facilities in the State of Indiana, operating as a part of the Public Broadcasting System (PBS).

    B. BRI is engaged in the development of art instructional television programs and related business endeavors, including distribution of art instructional videotapes, programming and books, and sale of art materials.

3. PURPOSE: The purpose of this Contract is to define the relationship, rights and obligations of the parties with regard to:

    a. their co-operative efforts to produce, distribute, market and broadcast the television productions of art instructional programs and such other programming, if any, as they may agree to; and

    b. such other endeavors and efforts as are related to the foregoing; and

    c. such further endeavors and efforts as they may agree to undertake.

CONFIDENTIAL

BRI0000317

CONTRACT BETWEEN BOB ROSS INC. AND EASTERN INDIANA COMMUNITY TV, INC.

4. STANDARD OPERATING PROCEDURE: Both heretofore and contemplated in the future, BRI has developed art instructional television series, each such series consisting of Thirteen (13) Half Hour shows, featuring Robert N. Ross, and using the title "The Joy of Painting - Series #" (where # represents the sequential number of the particular series). Coincident with the release of the series, BRI has developed and published a companion book, bearing the same title and including material based on and designed to track the television series, so that the same would be attractive as a purchase to viewers of the series. All of such work has been developed for BRI as "work for hire" by Robert N. Ross (including program appearance) and by others, and all copyrights for which are owned outright by BRI.

5. UNDERWRITING:

A. BASIC FUNDING: Production of each future series is contingent upon obtainment of funding by WIPB for production and transmission, from an underwriter or underwriters in the amount of at least Fourteen Thousand ($14,000) Dollars per series. WIPB shall bear the cost of producing and transmitting each series on a local and national basis, which costs shall be derived from the aforesaid underwriter funding.

B. UNDERWRITER CREDITS: Underwriters shall receive on-air credit for not more than three years (unless agreed otherwise by BRI). After such a credit period, WIPB may, with BRI's consent, re-release a previously produced and recorded series with new or extended underwriting credits in exchange for new funding to cover redistribution and/or enhancements.

C. ENHANCEMENTS FUNDING: It is further agreed that for each series, if any, for which WIPB acquires funding of Twenty Five Thousand ($25,000) Dollars or more, Ten (10%) Percent of the gross amount of such funding shall be used for program enhancements, such as animations, graphics, design, and visual effects, as the parties may agree.

CONFIDENTIAL

BRI0000318

CONTRACT BETWEEN BOB ROSS INC. AND EASTERN INDIANA COMMUNITY TV, INC.

D. FUNDING ADJUSTMENTS: Such minimum levels of basic funding and enhancements funding shall be reviewed at least annually between the parties to adjust for inflation, technological changes and such other factors as may reasonably affect the production activities.

E. PARTIES UNDERWRITING: Each party has the right, but not the duty, to act as an underwriter or co-underwriter for any series or part of a series, but the recitation of such right herein shall not be construed as a commitment, requirement, or basis for reliance. Underwriting by a party shall not alter any rights or duties of a party as to this Agreement, except to the extent as agreed otherwise in writing.

6. WIPB SERIES DUTIES:

A. DIRECT PRODUCTION: As to each such series, WIPB shall be responsible for producing the series, including the commercial quality videotaping to the highest quality within WIPB's capabilities (and in no event failing to meet all PBS technical standards for broadcast), provision of production facilities, provision of technically qualified production off-camera labor, pre-production, production, and post-production technical matters.

B. BRI COPIES: WIPB shall provide BRI upon request a reasonable number of copies and masters of each series produced, for which BRI shall reimburse WIPB for the actual cost over one complete series master and one complete series copy requested.

C. TRANSMISSION: WIPB shall arrange and be responsible for the transmission of the series nationally to Public and Educational television stations.

D. DISTRIBUTION: WIPB shall make its best efforts to achieve the widest possible reasonable transmission and distribution, in accord with industry practice, of each series in the most effective manner. WIPB shall

CONFIDENTIAL

BRI0000319

CONTRACT BETWEEN BOB ROSS INC. AND EASTERN INDIANA COMMUNITY TV, INC.

collaborate and co-operate with BRI in promoting and publicizing each series, specifically by performing ratings analysis and station surveys, preparing public information kits, exploiting personal contacts, and by such other means as may be reasonably feasible. BRI and WIPB shall share equally the costs of all such activities, which activities are to be undertaken by mutual agreement.

7. BRI PERFORMANCE DUTIES: BRI shall be responsible for developing program content, supply of art materials, and furnishing of the artist Robert N. Ross on-camera.

8. SERIES OWNERSHIP: All ownership rights, including but not limited to all series-related copyrights (including the programs, series, books and art), master tapes, scripts, transcripts, and on-air produced paintings, are vested solely in BRI. Such rights vested in BRI further include, but are not limited to all domestic, foreign, English language, foreign language, electronic media, print media, mixed media, non-electronic media, broadcast, non-broadcast, derivative, and other rights of every kind and character.

9. WIPB BROADCAST RIGHTS: BRI hereby grants to WIPB:

   A. NATIONAL PUBLIC BROADCAST RIGHTS: The right within the United States to broadcast, air, use, distribute and license the series for Public and Educational television domestic broadcast, for a period of three (3) years, measured as to and for each series from the earlier of (i) the date of the first broadcast of the first program in each series or (ii) six (6) months after the first program in each series is available for broadcast.

   B. WIPB BROADCAST RIGHTS: The right to directly broadcast the series over WIPB and its domestic translator or domestic repeater, for so long as WIPB shall desire to do so, subject only to the limitations expressed in the TERMINATION provision.

7

CONFIDENTIAL

BRI0000320

CONTRACT BETWEEN BOB ROSS INC. AND EASTERN INDIANA COMMUNITY TV, INC.

C. ADDITIONAL AGREED RIGHTS: The parties agree that BRI may grant additional rights to WIPB from time to time, on a series-by-series basis, but no duty for the same is implied by this recitation.

10. REVERSIONS:

A. REDELIVERY: At the end of the three (3) year grant period of Paragraph 9A hereof (unless extended, renewed or agreed otherwise in writing) WIPB shall, on demand from BRI, deliver to BRI the original master tapes, and other media masters, if any, for such series, together with all other materials in WIPB's possession used or useable in the broadcast, distribution or reproduction of the series, except WIPB shall be entitled to retain one broadcast-quality tape of the series for its own rebroadcast. Further, WIPB shall promptly bulk-erase all other copies, tapes and duplicates not so delivered to BRI, and WIPB shall certify such erasure to BRI.

B. ALL REVERT: At the expiration of any grant to WIPB all rights so granted shall revert to BRI, and WIPB shall co-operate with BRI to promptly deliver all evidence, proof, and certification of such rights to BRI's dominion and control.

11. OTHER DISTRIBUTION:

A. OTHER BROADCAST: During the three (3) year grant period, WIPB may allow rebroadcast of a series by other than Public or Educational television stations, including cable television, with the prior written approval of BRI, not to be unreasonably withheld. Further, WIPB will not solicit or otherwise attempt distribution to other than Public or Educational television stations without BRI's advance written approval.

B. ROYALTIES: If and when BRI shall sell or license any series or program for broadcast from within a sovereign nation outside the U.S., in exchange for monetary compensation or without such compensation, BRI shall

8

CONFIDENTIAL

BRI0000321

CONTRACT BETWEEN BOB ROSS INC. AND EASTERN INDIANA COMMUNITY TV, INC.

pay to WIPB a Royalty equal to the lesser of Fifteen (15.0%) Percent of the Net Operational Proceeds derived by BRI (or any affiliate operating under BRI's aegis) from such compensation or Thirty Thousand ($30,000.00) Dollars. "Net Operational Proceeds" are defined as Gross Revenues less all directly allocable costs of obtaining and servicing the sale or license, including but not limited to sales agent commissions, first-time transcription, first-time translation, customs duties, taxes, Master production, duplication, format conversion, etc.

The total payment to WIPB on account of transactions in any sovereign nation shall not exceed Thirty Thousand ($30,000.00) Dollars. In the event of changes in national identity, the status as of the date of commitment to the first transaction shall be controlling as to ALL calculations and all transactions involving such national identities.

If and to the extent WIPB earns less than Thirty Thousand ($30,000.00) Dollars in Royalties from a sale or license transaction in a sovereign nation, WIPB shall further be entitled to receive additional amounts so as to yield up to the cap of a grand aggregate total of Royalties of Thirty Thousand ($30,000.00) Dollars on sales of products and services (other than the sale or license for broadcast of programs or series) at the Royalty rate of Five (5.0%) Percent of Gross Profit from such sales, if any, AFTER BRI has first recovered its direct costs expended in each nation to establish sales in such nation. "Gross Profit" on such non-broadcast sales is defined as Gross Revenues, less direct costs of production (including but not limited to shipping, duties and other directly allocable expenses) as to products sales, or less direct costs of performance for sales of services.

Payments to WIPB shall be made quarterly within forty-five (45) days of the close of each quarter in which funds are received by BRI in the U.S. or, if maintained in the host country at BRI's option (i.e. in the absence of blockage of repatriation), as of the date the funds are available

9

CONTRACT BETWEEN BOB ROSS INC. AND EASTERN INDIANA COMMUNITY TV, INC.

to BRI. All payments shall be calculated based on U.S. currency as of the time received by BRI, or exchange rates in effect as of the date of availability if BRI opts against repatriation.

If this Agreement shall terminate for any reason whatsoever, WIPB's rights to Royalties shall terminate on the third anniversary after such termination. However, if the Agreement is so terminated, WIPB shall be entitled only to Royalties for nations in which a broadcast transaction has occurred prior to such termination.

C. INQUIRIES: WIPB shall refer all inquiries for non-public TV sale or license to BRI, which shall have sole responsibility and right to negotiate and arrange any such commercially reasonable sales or licenses to which it might agree, subject always to a duty of good faith to WIPB.

D. BRI RETENTION: Notwithstanding the foregoing, BRI retains the right to grant rights to use, broadcast, air, and otherwise disseminate programs and series without compensation therefor in the interests of promotion, publicity, charity and other good and reasonable purposes.

12. ALTERATIONS & UPDATES: BRI shall have the right, at its expense, to alter any series after first release for the purposes of enhancement, capitalizing on new technologies, promoting foreign language distribution, or other good reason. BRI and WIPB may agree that alterations and updates may be cooperatively performed, with funding and costs apportioned as the parties may agree. WIPB may not alter any series without BRI's approval. Either party may make excerpts from a series for the purpose of preparing promotional materials for the series and companion books. WIPB shall promptly furnish BRI copies of any promotional materials so prepared by WIPB.

13. BOOK SALES:

A. PUBLISHING: BRI shall be responsible for publishing and

10

CONFIDENTIAL

BRI0000323

-CONTRACT BETWEEN BOB ROSS INC. AND EASTERN INDIANA COMMUNITY TV, INC.

distributing the companion book for each series, and shall make best efforts to assure publication in a timely manner of each companion book to maximize sales in coordination with the release of each program series.

B. MAIL ORDERS: All on-air mail order solicitations for companion books domestically broadcast through Public and Educational television stations shall identify WIPB as the addressee for such orders. WIPB shall promptly forward all such orders to BRI which shall be responsible for fulfilling such orders as quickly as commercially feasible.

C. REVENUE DIVISION: BRI shall be entitled to Ninety-One (91%) Percent of all gross proceeds from sales (less bad checks) placed in response to Public and Educational television station broadcasts of the series. WJPB shall be entitled to the remaining Nine (9%) Percent. Gross proceeds shall include sales from mail order and sales made by telephone through BRI's "800" toll-free number displayed at the end of the broadcasts. Such "800" sales shall be accepted for credit card purchases only, the costs of which shall be absorbed by BRI. All other broadcast-generated inquiries shall be referred to WIPB at such address as it directs.

D. BOOKS ACCOUNTING: BRI shall render a monthly accounting and payment of specified percentage to WIPB by the 15th of the following month.

E. CO-OPERATION: Both parties shall make best efforts to promote the widest possible sales in a commercially reasonable manner of the companion book for each series.

14. VIDEO SALES:

A. SALE RIGHTS: BRI shall have the unrestricted and uninterrupted right to duplicate and distribute home video cassettes (and all other home entertainment media, including but not limited to laser disks, interactive video, audiotapes, and other forms whether or not such technology is extant at the time of execution of this Contract) of each series and each program,

11

CONFIDENTIAL

BRI0000324

CONTRACT BETWEEN BOB ROSS INC. AND EASTERN INDIANA COMMUNITY TV, INC.

including but not limited to the rights to edit, combine, subdivide, merge, excerpt and otherwise use and manipulate all such material for and in such video cassette reproduction.

B. COSTS: All costs of duplication and reproduction shall be borne by BRI.

C. ROYALTIES: WIPB shall be entitled to Nine (9.0%) Percent of all gross proceeds actually received by BRI (net of returns and allowances) from U.S. video sales of the English-language versions of the series, not materially altered from the versions as produced by WIPB. Foreign-language and materially altered videotapes are excluded from the royalty calculations of this Paragraph 14.

D. ACCOUNTING: BRI shall render a monthly accounting and payment of the specified percentage to WIPB by the 15th of the following month.

E. PROMOTION: Both parties shall make best efforts to promote the widest possible sales of home video cassettes (and other home video media) in a commercially reasonable manner.

15. FURTHER ASSURANCES: Each party shall co-operate with the other in promoting achievement of the ends and purposes set forth in this Contract. Each shall further execute such additional documents and take such other actions as may be necessary thereto. Further, each is entitled to audit the books and records of the other as to those entries and documents directly relating to the terms of this Contract, with the expenses to be paid by the party exercising audit rights.

16. TERM:

A. INITIAL TERM: This Contract shall have an initial term of three (3) years.

B. PRIOR EFFECTS: Execution of this Contract shall not be interpreted as establishing or revising the initiation date for prior

12

CONFIDENTIAL

BRI0000325

CONTRACT BETWEEN BOB ROSS INC. AND EASTERN INDIANA COMMUNITY TV, INC.

agreements integrated herein as of the execution date hereof, but, rather, such prior agreements shall be dated and aged as of their original execution as interpreted within the terms thereof.

  C. RENEWALS: At the end of the expiration of the initial terms (as to each series, including but not limited to such additional series as may be developed under this Contract) this Contract shall be automatically renewed on a quarter-to-quarter basis (as to each series, including but not limited to such additional series as may be developed under this Contract) unless either party shall give at least ninety days notice of non-renewal, provided the Contract has not otherwise been terminated.

17. CANCELLATION:

  A. BY BRI: BRI may cancel this Contract on fifteen (15) days written notice in the event that WIPB:

    i. Seeks the protection of federal or state bankruptcy or insolvency laws, or is adjudicated a bankrupt, or files for reorganization, or is placed (voluntarily or involuntarily) in receivership, or makes an assignment for the benefit of creditors; or

    ii. Loses its license or franchise to broadcast; or

    iii. Leaves the Public Broadcasting System for any reason; or

    iv. Is no longer a Public television station for any reason; or

    v. Is no longer a non-profit entity for any reason; or

    vi. Files for liquidation, liquidates, or ceases to operate; or

    vii. Merges, combines, is sold, is bought out, is taken over, or otherwise loses its independent identity; or

    viii. Breaches this Contract or any other agreement with BRI and fails to cure such breach within fifteen (15) days of notice thereof.

  B. WIPB may cancel this Contract on fifteen (15) days written notice if BRI:

13

CONFIDENTIAL

BRI0000326

CONTRACT BETWEEN BOB ROSS INC. AND EASTERN INDIANA COMMUNITY TV, INC.

    i. Seeks the protection of federal or state bankruptcy or insolvency laws, or is adjudicated a bankrupt, or files for reorganization, or is placed (voluntarily or involuntarily) in receivership, or makes an assignment for the benefit of creditors; or

    ii. Files for liquidation, liquidates, or ceases to operate; or

    iii. Breaches this Contract or any other agreement with WIPB and fails to cure such breach within fifteen (15) days of notice thereof.

18. PROCEDURE ON TERMINATION: Upon termination or cancellation of this Contract for any reason:

A. TAPES: All masters, copies and duplicates of all series shall be delivered to BRI by WIPB, EXCEPT that if termination occurs due strictly to expiration without renewal and not on account of Cancellation under Paragraph 17, WIPB shall be entitled to retain one broadcast quality tape for its own broadcast use (without reproduction or duplication) in accord with Par. 8.

B. FINAL ACCOUNTING: The parties shall each prepare an accounting of moneys due, and shall pay each other such amounts as due, subject to offset of actual damages in the event of uncured breach resulting in Cancellation.

C. SURVIVALS: The parties shall be bound to honor all agreements and arrangements with third parties (such as other broadcasters) relative hereto, as if this Contract had not been terminated, and all relevant terms of this Contract shall be deemed to survive for such purpose, but no renewal or extension of any such agreement or this Contract shall be made unless consented to by both BRI and WIPB.

19. RELATIONSHIP: The parties are entering only into a contractual relationship involving the exchange of services for value and are not entering into any partnership, joint venture, or formation of any entity. Neither party has the right to hold itself out as the agent of the other in the absence of

14

CONFIDENTIAL

BRI0000327

CONTRACT BETWEEN BOB ROSS INC. AND EASTERN INDIANA COMMUNITY TV, INC.

specific empowering documentation in accord with law. Further, neither party may make any commitment for the other or bind the other to any third party without express prior written approval.

20. LIABILITIES:

    A. INSURANCE: Each party covenants to carry and keep in force liability insurance for its activities hereunder with commercially reasonable minimum policy limits. (Such insurance may be subsumed in the regular policies of each.) Either party may request proof of such insurance and may require it be named as an additional insured on the policy of the other.

    B. OTHER COVERAGE: Each party shall carry and keep in force such other insurance as may be required by applicable law, including but not limited to workman's compensation.

    C. INDEMNITIES: Each party agrees to indemnify and save harmless the other in and from any and all liabilities, losses, claims, damages, expenses, attorney fees, lawsuits, and detriments of every kind and character proximately arising out of its own negligence or willful malfeasance.

21. TRADEMARKS: Each party agrees to use and display the trademarks of the other in such mode and manner as to protect the rights of each and to co-operate with the reasonable instructions and requests of the other regarding such usage and displays.

22. COPYRIGHTS:

    A. NOTICE: All series, programs, tapes, masters, duplicates, books, copies and other copyrightable materials developed, produced or otherwise generated in the course of performance of this Contract shall bear the notice

        "© Copyright [Year] by Bob Ross Inc. All Rights Reserved."

    B. INCLUSION: WIPB shall neither release nor publicize any of such copyrightable materials without including such notice properly affixed to

CONFIDENTIAL

BRI0000328

---CONTRACT BETWEEN BOB ROSS INC. AND EASTERN INDIANA COMMUNITY TV, INC.

protect the rights of BRI.

23. DISPUTES:

A. ARBITRATION: Any dispute about the terms of this Contract, other than for nonpayment of any moneys due, shall be resolved by binding arbitration in accord with the Commercial Arbitration Rules of the American Arbitration Association, with such arbitration proceeding to be conducted in Washington, D.C. The terms of such award may be entered as a judgment in any court of competent jurisdiction.

B. ENFORCEMENT COSTS: The party for whom an award is made or a judgment is entered shall be entitled to recover all costs of enforcement, including but not limited to reasonable attorney fees.

24. COMPLIANCE: Both parties covenant that they shall perform in accord with all applicable law, that each shall be responsible for its own compliance with such law (including taxation laws), and each knows of no reason which would prevent or prohibit each from entering into and fully performing the obligations of this Contract.

25. AMENDMENTS:

A. SUBAGREEMENTS: The parties may agree to alter the terms of this Contract as they apply to any particular series, program, book, or other subagreement, provided such alteration is memorialized in writing, but the same shall not otherwise modify this Contract or any other subagreement, unless such modification is stated as so effective in clear and unambiguous written terms signed by both parties.

B. MODIFICATIONS: This Contract may not be modified except in a writing signed by both parties, but any course of conduct agreed to by the parties (explicitly or tacitly) shall not be deemed a breach, a nullity, an unlawful act, a permanent modification, or a permanent waiver.

BRI0000329
CONFIDENTIAL

CONTRACT BETWEEN BOB ROSS INC. AND EASTERN INDIANA COMMUNITY TV, INC.

26. HEADINGS: Paragraph headings and subheadings are for convenience only, and shall not be construed to have any meaning or to support any particular interpretation of any part or all of this Contract.

27. CHOICE OF LAW: This Contract shall be interpreted under the laws of Virginia.

EASTERN INDIANA COMMUNITY      BOB ROSS INC. (BRI)
TELEVISION, INC. (WIPB)

by: _____      by: _____
    An Authorized Officer                  An Authorized Officer

Date Signed: _____, 1990     Date Signed: _____, 1990

17

BRI0000330

CONFIDENTIAL