IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RSR ART, LLC, </br></br>*Plaintiff,* </br></br> v. </br></br> BOB ROSS, INC., </br></br> *Defendant.* | Civil No. 1:17-cv-1077 </br></br> Hon. Liam O'Grady |

## MEMORANDUM OPINION

This lawsuit arises from an ownership dispute regarding Bob Ross's intellectual property and right of publicity. Both parties filed motions for summary judgment. The motions were fully briefed, and the Court heard oral argument on September 7, 2018. Upon consideration of the pleadings, the oral arguments, and the evidence in the record, the Court concluded that summary judgment for Defendant was appropriate and issued a short order to that effect on September 17, 2018 in recognition of the case's pending trial date. Dkt. 73. This Memorandum Opinion follows to explain the basis for the Court's Order.

### I. BACKGROUND

Bob Ross was a well-known painter, art instructor, and television host who died in Florida on July 4, 1995. Plaintiff RSR Art, LLC was founded by, among others, Bob Ross's son, Robert Stephen Ross. Defendant Bob Ross, Inc. ("BRI") was founded by Bob Ross, his wife, and his friends Walter and Annette Kowalski "to promote the artist Bob Ross through any and all commercial means and media available." Dkt. 56-1 ¶ 9 (W. Kowalski Decl.). The parties dispute ownership of the Bob Ross intellectual property, including the Bob Ross right of publicity.

From 1986 to 1992, BRI registered five trademarks of the name and likeness of Bob Ross with Bob Ross's written consent. Dkts. 56-6, 56-7, 56-8, 56-9, & 56-10. During Bob Ross's lifetime, BRI also sold various products featuring Bob Ross's name and likeness with Bob Ross's knowledge and encouragement. Similarly, during Bob Ross's lifetime and with his knowledge and consent, BRI entered into several license agreements granting third parties a license to use Bob Ross's name and likeness. Dkts. 56-11, 56-12, 56-13. The licensing agreements each contained language stating that BRI owned all rights to the products bearing the Bob Ross name, likeness, biographic material, trademark or logo. *Id.* Defendants have also provided a memo purportedly written by Bob Ross which states that "the greatest asset we [BRI] own is the Bob Ross name and image." Dkt. 56-1 at 10.

In 1994, BRI drafted an agreement stating that BRI had "sole and exclusive" commercial and derivative rights to the Bob Ross name, image, voice, biographical material, and creative works. Dkt. 54-3. The agreement purported to formalize in writing oral consents from Bob Ross regarding BRI's exclusive rights "governing the use of Bob's name, likeness, image, biographic material, and persona." *Id.* However, this agreement was never signed, and Bob Ross's son does not think his father would have given BRI "all future use of everything that has to do with [his] name." Dkt. 56-21 at 37.

On May 12, 1994, Bob Ross created the Bob Ross Trust, Dkt. 54-2, which he amended on May 25, 1995, Dkt. 54-5 ("First Amendment to the Trust"). The First Amendment to the Trust states:

> Trustee [Bob Ross] shall assign to Donor's brother, JIMMIE L. COX, . . . a fifty-one percent (51%) interest in all rights and interests in intellectual property, and shall assign to Donor's son, ROBERT STEPHEN ROSS, . . . a forty-nine percent (49%) interest [in] said rights and interests in intellectual property, to include all rights, title, interests, goodwill, artist's moral rights, resale royalty rights, and renewal rights . . . in any and all intellectual property . . . including, but not limited to, copyrights and trademarks

> regarding Donor's name, likeness, voice, and visual, written or otherwise recorded works. Further, such rights hereby conveyed extend to all versions, subsidiary, and derivative embodiments of the rights; and hereby empower the Trustee to act to license . . . [and] reclaim . . . such works and rights, including the power to defend, rescind or enforce related contracts or other actions by filing suit in law or equity.

*Id.* at 3–4.

On the same day he amended the Trust, Bob Ross signed an "Assignment of Rights and Interests in Intellectual Property." Dkt. 54-4. This document granted to Bob Ross, as trustee,

> all rights, title, interests, goodwill, artist's moral rights, resale royalty rights, and renewal rights, whether vested, statutory, common law, contingencies, or expectancies in any and all intellectual property . . . including, but not limited to, copyrights and trademarks regarding my name, likeness, voice, and visual, written or otherwise recorded works. Further, such rights hereby conveyed extend to all versions, subsidiary, and derivative embodiments of the rights; and hereby empower the Trustee to act to license . . . [and] reclaim. . . such works and rights, including the power to defend, rescind or enforce related contracts or other actions by filing suit in law or equity.

*Id.* at 2–4. No document was signed to transfer the rights from the trustee to Jimmie Cox and Robert Stephen Ross as required by the First Amendment to the Trust until a *nunc pro tunc* was signed in 2017. *See* Dkt. 54-6.

On July 4, 1995, Bob Ross died in Florida and Jimmie Cox became the trustee of the Bob Ross Trust. BRI continued to develop, market, and sell Bob Ross products after Bob Ross's death. Bob Ross's son, one of Plaintiff RSR Art's founders, continued to actively participate in BRI activities promoting Bob Ross even after Bob Ross's death. Dkt. 56 at 17.

In April 1997, the Trust and Bob Ross's Estate signed a Settlement Agreement with Defendant BRI stating:

> FIDUCIARIES [the Trust and the Estate] acknowledge that, to the best of the knowledge of the FIDUCIARIES, BRI has sole and exclusive ownership of all rights in and to all of the creative works of Robert N. Ross and excepting any transfer, assignment, or other action made by BRI or Robert N. Ross during his lifetime. Reciprocally, BRI warrants that to the best of its knowledge, all such creative works were prepared by Robert N. Ross as "work made for hire" on behalf of BRI and so made by Robert N. Ross as an employee of BRI, for which Robert N. Ross was paid a regular salary plus other benefits during his lifetime. . . .

3

> If any such rights or incidents of ownership in and/or to any of the foregoing copyrights, trademarks, publications, television series, creative works or other assets of BRI of any kind or character have somehow [vested in, could be claimed as vesting in, or could be claimed as assets of] the FICUCIARIES, the FIDUCIARIES hereby convey, transfer and assign all such rights and incidents of ownership and claims and ownership itself to BRI, further warranting that neither the FIDUCIARIES nor anyone on behalf of the FIDUCIARIES has done any act to encumber any part or all thereof.

Dkt. 56-16 at 2–3.

The Settlement Agreement was accompanied by an Assignment, which stated that the Bob Ross trademarks and all artworks created by Bob Ross after BRI was founded were the sole property of BRI. Dkt. 56-17 at 2. The Assignment also provided that:

> [Bob Ross's] ESTATE will not, alone or with others, directly or indirectly, challenge any of BRI's said ownership or rights in or to any or all of the foregoing copyrights, trademarks, artworks, television programs, television series, books, companion books or other assets of BRI, nor attempt to or in fact procure, support, aid, encourage or promote any such challenge. . . .
>
> To the extent, if any, any such rights or incidents of ownership are somehow vested in ESTATE, ESTATE hereby conveys, transfers and assigns all such rights and incidents of ownership and ownership itself to BRI . . . .

*Id.* at 3.

Both the Estate and the Trust also signed separate Mutual Releases with BRI which state that the parties and their heirs, assigns, successors in interest, etc., "do, now and forever, absolutely and irrevocably, hereby release each other in and from any and all claims, suits, liabilities, complaints, losses, damages, and charges of every kind and character arising prior to the date of execution hereof." Dkts. 56-18, 56-19.

On October 27, 2016, Jimmie Cox transferred all his rights under the First Amendment to the Trust to Robert Stephen Ross, Bob Ross's son. Dkt. 54-7 at 2. In the assignment, Cox described those rights as including, among other things, "all other intellectual property, such as rights of publicity, copyright, [and] trademark . . . ." *Id.*

4

On February 10, 2017, Robert Stephen Ross transferred his rights to the Bob Ross intellectual property to Plaintiff, RSR Art. Dkt. 54-8. On May 26, 2017 Jimmie Cox, as trustee, executed a *nunc pro tunc* assignment that purported to transfer Bob Ross's intellectual property rights from Jimmie Cox as trustee to Jimmie Cox and Robert Stephen Ross as specified in and required by the First Amendment to the Trust effective July 5, 1995.

On September 25, 2017, Plaintiff filed suit against Defendant for BRI's continued use and licensing of the Bob Ross intellectual property and right of publicity. The Complaint alleges three counts: (I) false representations in selling and licensing products bearing the Bob Ross name and likeness in violation of the Lanham Act and state law, (II) misappropriation of the Bob Ross right of publicity, and (III) cancellation of trademark registrations. Dkt. 1. Plaintiff moved for partial summary judgment on Count II, asking the Court to find that (1) Plaintiff owns Bob Ross's right of publicity, (2) Defendant lacks rights or claims to Bob Ross's right of publicity, and (3) Defendant has infringed Plaintiff's rights. Dkt. 48. Defendant also moved for summary judgment, arguing the Complaint should be dismissed for three reasons: (1) Plaintiff lacks standing to bring its claims as it does not own the intellectual property rights at issue, (2) Plaintiff's claims are barred by the applicable statutes of limitation, and (3) Plaintiff's claims are barred by the doctrine of laches. Dkt. 53.

## II. LEGAL STANDARD

Summary judgment is appropriate where, viewing the facts in the light most favorable to the non-moving party, there remains no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Marlow v. Chesterfield Cty. Sch. Bd.*, 749 F. Supp. 2d 417, 426 (E.D. Va. 2010). A party opposing a motion for summary judgment must respond with specific facts, supported by proper documentary evidence, showing that a genuine

dispute of material fact exists and that summary judgment should not be granted in favor of the moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Conclusory assertions of state of mind or motivation are insufficient to defeat summary judgment. *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988). Further, as the Supreme Court has held, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 447 U.S. at 247–48 (emphasis in original).

### III. ANALYSIS

Defendant is entitled to summary judgment because Plaintiff does not own the intellectual property at issue and Plaintiff's claims are barred by the statute of limitations.

#### A. Plaintiff Does Not Own the Bob Ross Intellectual Property.

For Plaintiff to have standing in this lawsuit, Plaintiff must own the Bob Ross intellectual property rights, including the Bob Ross right of publicity.[1] *See, e.g., Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (explaining that Plaintiffs must have suffered an "injury in fact" to have constitutional standing); *E. Iowa Plastics, Inc. v. PI, Inc.*, 832 F.3d 899, 903–04 (8th Cir. 2016) (holding the plaintiff lacked standing to seek trademark cancellation because the plaintiff did not establish another violation of the trademark laws); *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 777 (Fed. Cir. 1996) ("Absent ownership of the Intellectual Property, [Plaintiff] lacked standing to sue on the" intellectual property infringement claims.); *Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1557 (11th Cir. 1991) (stating that in order to have standing for a trademark cancellation claim, the plaintiff must show that it is likely to be damaged from continued registration). Standing is a threshold jurisdictional

---

[1] *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 928 (6th Cir. 2003) ("The right of publicity is an intellectual property right . . . .").

6

requirement in every federal case and can be raised by a defendant at any time. *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994). Upon careful review of the parties' arguments and the summary judgment exhibits, the Court is persuaded that Plaintiff does not own the rights to the Bob Ross intellectual property, including the right of publicity. As a result, Plaintiff does not have standing to bring this lawsuit and, even if it did, Defendant would be entitled to judgment as a matter of law.

The record demonstrates that Bob Ross gave BRI the right to his intellectual property and right of publicity during his lifetime. While there is no formal written agreement assigning those rights to BRI, there is ample evidence in the record supporting that the unsigned written agreement would have merely formalized Bob Ross's oral grant of the exclusive rights to his intellectual property and right of publicity to BRI. Bob Ross formed BRI – a company he endowed with his name – with his wife and the Kowalskis to commercially promote his name and likeness. In a memorandum, Bob Ross described his name and likeness as being the best thing "we" – BRI – owned. Dkt. 56-1 at 10. And throughout his lifetime, Bob Ross acted as though and consented to documents stating that BRI held exclusive rights to his name, image and likeness. With Bob Ross's explicit consent, BRI registered multiple trademarks utilizing Bob Ross's name and likeness. Dkts. 56-6, 56-7, 56-8, 56-9, & 56-10. Also with Bob Ross's consent, BRI entered into various licensing agreements which stated that BRI, not Bob Ross, exclusively owned the relevant rights and intellectual property. Dkts. 56-11 at 2, 56-12 at 8, 56-13 at 2. There is therefore ample evidence in the record demonstrating that Bob Ross gave BRI the rights to his intellectual property and right of publicity during his lifetime and before he created the Trust.

Because he had already invested his rights with BRI when he created the Trust, Bob Ross did not have any rights – including the right "to revoke" prior assignments – to transfer through the Trust. Thus, even if the *nunc pro tunc* cured the defect in the chain of title to the Trust's assets, Plaintiff would not own the intellectual property at issue because the Trust never owned it. Similarly, because Bob Ross gave BRI his right to publicity during his lifetime, it could not have transferred to his son on his death.[2]

More importantly, the Trust ended any claim it may have had to the Bob Ross intellectual property when it signed the broadly worded 1997 Settlement Agreement and accompanying documents. As part of the Settlement Agreement, BRI, the Trust, and Bob Ross's Estate all agreed that "BRI has sole and exclusive ownership of all rights in and to all of the creative works of" Bob Ross and that any rights or claims of ownership either the Trust or the Estate may have held were thereby "convey[ed], transfer[ed] and assign[ed]" to BRI. Dkt. 56-16 at 2–3. The Trust and the Estate also signed Mutual Releases with BRI releasing any claims that arose prior to the execution of the Mutual Release, which included ownership disputes regarding the Bob Ross intellectual property and right of publicity. Dkts. 56-18, 56-19.

Thus, Bob Ross's and BRI's course of conduct throughout Bob Ross's lifetime and the 1997 Settlement Agreement demonstrate that BRI owns the Bob Ross intellectual property and right of publicity. As a result, Plaintiff lacks standing to sue and, in any event, BRI would be entitled to judgment as a matter of law.

### B. Plaintiff's Claims Are Barred by the Statutes of Limitations.

Alternatively, even if Plaintiff did own some rights to the Bob Ross intellectual property and right of publicity, Plaintiff's claims would be barred by the applicable two-year and five-

---

[2] Under Florida law, oral consent is sufficient to transfer publicity rights during a grantor's lifetime. *See* Fla. Stat. § 540.08(1).

8

year statutes of limitations. BRI has held itself out as owning the Bob Ross intellectual property and right of publicity for decades, both before and after Bob Ross's death. It has expended large amounts of effort, time, and resources commercializing Bob Ross's name and likeness and defending those rights since its incorporation and after Bob Ross's death. Moreover, as noted above, the Trust and Estate transferred any rights they may have held to the Bob Ross intellectual property to BRI as part of the Settlement Agreement in 1997. Thus, while BRI may have expanded its commercialization of the Bob Ross intellectual property in recent years, BRI has asserted exclusive ownership of the Bob Ross intellectual property and right of publicity since at least 1997. Accordingly, all of Plaintiff's claims are barred by the statutes of limitations.

### IV. CONCLUSION

For these reasons, and for good cause shown, the Court **DENIED** Plaintiff's' Motion for Partial Summary Judgment (Dkt. 48) and **GRANTED** Defendant's Motion for Summary Judgment (Dkt. 53). Judgment shall issue through a separate order.

March 31, 2019  
Alexandria, Virginia

Liam O'Grady  
United States District Judge